IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-02383 |
| | § | |
| CONSOLIDATED GRAPHICS, INC.; THOUSAND OAKS PRINTING & SPECIALTIES, INC. d/b/a T/O PRINTING, and DANIEL CHAMBERS, AN INDIVIDUAL, | § § § § § | |
| Defendants, | § § | |
| _____ | § § | |
| SENTRY INSURANCE, A MUTUAL COMPANY, | § § § | |
| Intervenor, | § § | |
| v. | § § | |
| CONSOLIDATED GRAPHICS, INC., THOUSAND OAKS PRINTING & SPECIALTIES INC. d/b/a T/O PRINTING, and DANIEL CHAMBERS, AN INDIVIDUAL, | § § § § § | |
| Defendants. | § § | |

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is the Motion for Summary Judgment
(Docket Entry No. 27) filed by Plaintiff Continental Casualty
Company ("Continental"), the Motion for Summary Judgment (Docket

_____

   [1]   The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636©) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 2, 20.

Entry No. 43) filed by Intervenor Sentry Insurance, a Mutual Company ("Sentry"), and the Cross-Motion for Partial Summary Judgment against Sentry (Docket Entry No. 47) filed by Defendants Consolidated Graphics, Inc. ("CGX"), Thousand Oaks Printing Specialties, Inc. d/b/a T/O Printing ("T/O Printing"), and Daniel Chambers ("Chambers").  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Continental's Motion for Summary Judgment, **GRANTS** Sentry's Motion for Summary Judgment and **DENIES** Defendants' Cross-Motion for Summary Judgment.

## I.  Case Background

This is a dispute over insurance coverage.  Continental issued two excess liability insurance policies to CGX.[2]  Sentry issued two primary commercial general liability ("CGL") policies to CGX.[3]  CGX is a Texas corporation, and Defendant T/O Printing is its subsidiary based in California.[4]  Chambers is an individual claiming coverage under the policies.[5]  This case involves a request for declaratory judgment whether Continental and Sentry (hereinafter "the Insurers") have duties to defend and indemnify CGX against a lawsuit brought by a competitor for misappropriation

---

[2]     Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 1.

[3]     Intervenor's Mot. Summ. J., Docket Entry No. 43, p. 2.

[4]     Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 1.

[5]     Id.

of trade secrets.[6]  Because the Insurers' policies have similar language with respect to the duties to defend and indemnify, this court will discuss both motions concurrently.[7]

## A. **The Insurance Policies**

### 1. Continental's Policy

Continental is a liability insurer that issued two consecutive policies of excess umbrella liability insurance to CGX with effective dates October 1, 2005, to April 1, 2007, and April 1, 2007, to April 1, 2008, (the "Continental policy").[8]  For the purposes of this action, the language of the policies is effectively the same.

Continental's policy provides excess umbrella liability coverage over primary liability insurance issued by Sentry.[9]  It provides two types of coverage: 1) "bodily injury" and "property damage" and 2) "personal and advertising injury."[10]  Here, CGX claims coverage for "personal and advertising" injury.

---

[6]     Id.

[7]     CGX has raised the issue that Continental lacks summary judgment proof to determine its duty to defend and indemnify because Continental, whose policy coverage relates to Sentry's scheduled underlying insurance, has not presented evidence regarding whether the Sentry coverage is implicated by the Rudamac suit. Because the court is determining Continental's and Sentry's coverage simultaneously, this point is moot.  This court does not need to reach the issue of whether Sentry's coverage implicates Continental's coverage, because the court finds that there is no "advertising injury" under the language of either policy.

[8]     Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 1.

[9]     Id.

[10]    Id. at p. 5.

Under the terms of the policy, Continental is required to pay on behalf of the insured sums in excess of the scheduled underlying insurance that the insured becomes legally obligated to pay as a result of any "personal and advertising injury" covered by the policy.[11]  The policy applies to "Personal and Advertising Injury" caused by one or both of the following enumerated offenses, among others:

> **g.**  The use of another's advertising idea in your "advertisement;"
>
> **h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement;"[12]

Additionally, the policy defines "advertisement" as follows:

> **"Advertisement"** . . . a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters . . . .[13]

## 2. Sentry's Policy

Sentry is a liability insurer that issued two primary CGL policies to CGX effective from April 1, 2007, to April 1, 2008, (collectively, the "Sentry policy").[14]  The Sentry policy provides coverage in two parts: 1) Coverage A for "bodily injury" or

---

[11]     Pl.'s Mot. Summ. J., Docket Entry No. 10, Ex. 3, Continental's Insurance Policy, p. CIC0127.

[12]     <u>Id.</u> at CIC0131.

[13]     <u>Id.</u> at CIC0129.

[14]     Intervenor's Mot. Summ. J., Docket Entry No. 43, Ex. 3, Sentry Policy p. 1 (unnumbered); Ex. 4, Sentry Policy, p. 1 (unnumbered).

"property damage" and 2) Coverage B for "advertising injury."[15] Coverage A is not at issue here.

Coverage B of the Sentry policy provides that Sentry will pay those sums that CGX becomes legally obligated to pay as damages because of "advertising injury" and has the duty to defend any suit seeking those damages.[16]

The Sentry policy's duty to defend/indemnify specifically applies to:

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products, or services;[17]

The Sentry policy sets out a list of enumerated offenses that constitute advertising injuries.  Relevant to this case is an advertising injury arising out of . . .

c. Misappropriation of advertising ideas or style of doing business;[18]

The Sentry policy does not define the term "advertising."

## A. __The Underlying Litigation (the "Rudamac suit")__

On May 4, 2007, Rudamac, Inc. ("Rudamac"), a California-based printing company, filed a complaint against CGX in California

---

[15]    Id., Ex. 3, Sentry's Insurance Policy, pp. 001-007 of 022; Ex. 4, Sentry's Insurance Policy, pp. 001-007 of 022.

[16]    Id., Ex. 3, Sentry's Insurance Policy, pp. 006- 007 of 022; Ex. 4, Sentry's Insurance Policy, pp. 006-007 of 022.

[17]    Id., Ex. 3, Sentry's Insurance Policy, p. 007 of 022; Ex. 4, Sentry's Insurance Policy, p. 007 of 022.

[18]    Id., Ex. 3, Sentry's Insurance Policy, p. 016 of 022; Ex. 4. Sentry's Insurance Policy, p. 016 of 022.

(hereinafter "the Rudamac complaint" or "the complaint").[19]   The
claims have been litigated in a lawsuit styled Rudamac, Inc., v.
Daniel Chambers, et al., Cause No. BC370594, Superior Court of the
State of California, County of Los Angeles ("the underlying case"
or "the Rudamac suit").[20]

The allegations that gave rise to the Rudamac suit are as
follows.  Daniel Chambers ("Chambers"), the nephew of Rudamac's
owner and president, began his employment with Rudamac nine years
ago.[21]   When Chambers was refused an ownership interest in the
company, he implemented a plan to move a substantial amount of
Rudamac's business to CGX and join the company as an employee.[22]
Rudamac alleged in its complaint that Chambers "solicited customers"
for CGX during his employment and "in doing so, . . .
misappropriated Rudamac's trade secrets, customers and other
valuable proprietary information."[23]   Specifically, Rudamac stated
that the misappropriated information included:

> . . . price information, including private data regarding the
> competitive pricing of the products, profit margin,
> particularized pricing information such as mark ups,
> discounts, or other promotions given; terms of sale . . . ;

---

[19]     Pl.'s Mot. Summ. J., Docket No. 27, Ex. 1, Rudamac Complaint, p.
CIC0001.

[20]     Id.

[21]     Pl.'s Mot. Summ. J., Docket No. 27, p. 6.

[22]     Pl.'s Mot. Summ. J., Docket No. 27, Ex. 1, Rudamac Complaint, p.
CIC0002, ¶ 10-17.

[23]     Id. at CIC0006, ¶ 10-14.

and cost information."[24]

Rudamac alleged that this information allowed CGX, among other things, to "solicit customers and suppliers for new orders" and that its trade secrets were valuable to a competitor because they could "use this information to . . . learn how to contact suppliers and customers."[25]   All of Rudamac's trade secrets, the complaint alleged, were kept on a secured and password-protected computer network, and, throughout Chambers' employment, CGX was aware of and understood the confidential and proprietary nature of the information.[26]

Based upon the facts of the case, Rudamac alleged that CGX "utilized [Rudamac's] successful business history and pricing strategy to solicit and misappropriate customers and trade secrets."[27]

Rudamac pled the following counts against CGX: 1) misappropriation of trade secrets; 2) unfair business practices; 3) intentional interference with prospective economic advantage; 4) breach of fiduciary duty; 5) constructive trust; 6) unjust enrichment; 7) a demand for accounting; and 8) intentional

---

[24]   Id. at CIC00007, ¶ 15-21.

[25]   Id. at CIC00009, ¶ 3-4.

[26]   Id. at CIC00007, ¶ 28.

[27]   Id. at CIC00012, ¶ 1-4.

interference with at will employment relations.[28]

Trial was held in this matter on December 9, 2008, and verdict was entered on February 2, 2009.[29]  The judgment found, based on the jury's verdict, that CGX committed three torts: interference with economic relations, breach of fiduciary duty, and misappropriation of trade secrets.[30]

As a result, Rudamac was awarded $5,698,000 in damages and, due to the findings of willful, malicious, oppressive, and fraudulent conduct, the jury awarded punitive damages against Thousand Oaks Printing for $1,500,000 and against CGX for $6,647,000.[31]

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or

---

[28]   Id. at CIC0001.

[29]   Pl.'s Second Supplement to Mot. Summ. J., Docket Entry No. 37, p. 1.

[30]   Id., Ex. 1, Judgment, Rudamac suit.

[31]   Id. at p. 8.

affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party meets its burden, the nonmoving party must then go beyond the pleadings and produce competent evidence that establishes each of the challenged elements of the case, and which demonstrates that genuine issues of material fact do exist which must be resolved at trial.  Celotex, 477 U.S. at 324.

A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 250.  When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).

### III.  Applicable Law

As this declaratory action is in federal court under diversity jurisdiction, state law governs substantive matters.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  Because Texas is the forum state in this matter, the court applies Texas' choice of law rules. Guar. Nat'l Ins. Co. v. Azrock Indus., 211 F.3d 239, 243 (5th Cir. 2000)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,

affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party meets its burden, the nonmoving party must then go beyond the pleadings and produce competent evidence that establishes each of the challenged elements of the case, and which demonstrates that genuine issues of material fact do exist which must be resolved at trial.  Celotex, 477 U.S. at 324.

A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 250.  When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).

### III.  Applicable Law

As this declaratory action is in federal court under diversity jurisdiction, state law governs substantive matters.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).  Because Texas is the forum state in this matter, the court applies Texas' choice of law rules. Guar. Nat'l Ins. Co. v. Azrock Indus., 211 F.3d 239, 243 (5th Cir. 2000)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487,

496 (1941) and stating that a federal district court sitting in diversity must apply the forum state's conflict of laws rules).

Any insurance policy payable to a "citizen or inhabitant" of Texas by an insurance company doing business in Texas is held to be governed by Texas law regardless of where the contract was executed or where the premiums are paid.   Tex. Ins. Code art. 21.42. Continental does business in Texas, and the named insured on the policy, CGX, is a Texas corporation.   Thus, Texas substantive law applies.   The parties agree that Texas law applies to the interpretation of the policies.[32]

## A.   Burden of Proof and Contract Interpretation

In general, the insured bears the initial burden of establishing that there is coverage under an applicable insurance policy, while it is the insurer's burden to prove the applicability of an exclusion permitting it to deny coverage.   Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005)(applying Texas law and placing burden on insurer to demonstrate that the only reasonable interpretation supports exclusion); Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co., 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied)(stating that the Texas Insurance Code places the burden on the insurer to prove any exception to coverage); see also Tex. Ins. Code Ann. § 554.002 (placing the

---

[32]     Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 3; Intervenor's Mot. Summ. J., Docket Entry No. 43, p. 8; See Def.'s Response, Docket Entry No. 28, (citing Texas law).

10

burden on the insurer to prove the applicability of a coverage exclusion).  If the insurer is successful, the burden shifts back to the insured to prove that an exception to the exclusion applies. Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998)(applying Texas law).

Under Texas law, insurance policies are subject to the rules of contract interpretation.  Azrock Indus., 211 F.3d at 243; Progressive County Mut. Ins. Co. v. Sink, 107 S.W.3d 547, 551 (Tex. 2003).  In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as expressed in the written instrument.  Mid-Century Ins. Co. of Tex. v. Lindsey, 997 S.W.2d 153, 158 (Tex. 1999); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995).  To this end, the court reads all provisions within the contract as a whole and gives effect to each term so that no part of the agreement is left without meaning.  MCI Telecomms. Corp v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999); see also Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003)(warning the court to "exercise caution not to isolate particular sections or provisions from the contract as a whole").  Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning.  Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1[st]

11

Dist.] 2003, pet. denied)(citing W. Reserve Life Ins. v. Meadows, 261 S.W.2d 554, 557 (Tex. 1953)).

When a contract, as written, can be given "a definite or certain legal meaning," then it is unambiguous as a matter of law and the court enforces it as written.  CBI Indus., 907 S.W.2d at 520.  If, however, a contract provision, particularly an exclusionary clause, is susceptible to more than one reasonable interpretation, the court must resolve the ambiguity in favor of the insured.  Sink, 107 S.W.3d at 551; see also Mid-Continent Cas. Co. v. Swift Energy Co., 206 F.3d 487, 491 (5th Cir. 2000)("In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern.").  In fact, if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable.  Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998).  The court will not find a contract ambiguous, however, merely because the parties advance conflicting interpretations.  Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1998).

**B.    Duty to Defend**

In Texas, an insurer's duty to defend and duty to indemnify are two distinct and separate duties.  Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821-22 (Tex. 1997).  Under the "eight-corners" or "complaint allegation" rule, an insurer's duty to

12

defend its insured arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). In determining whether this duty exists, the court's only job is to compare the four corners of the pleading with the four corners of the insurance policy. Reyna, 401 F.3d at 350; see also Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141.

When applying the eight-corners rule, the court considers the factual allegations in light of the insurance policy without regard to their truth or falsity. See Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973). The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. Merchs. Fast Motor Lines, Inc., 939 S.W.2d at 141. An insurer is required to defend its insured against suit as long as the allegations potentially give rise to at least one claim covered by the insurance policy. Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 201 (Tex. 2004)("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy."); see also Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393 (5th Cir. 1995), disapproved in part on other grounds by Federated Mut. Ins. Co. v. Grapevine Excavation, Inc., 241 F.3d 396, 398 n.3 (5th Cir. 2001), ("Even if the

13

plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage."). However, the court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. <u>Merchs. Fast Motor Lines, Inc.</u>, 939 S.W.2d at 141.

## C.   Duty to Indemnify

The duty to indemnify arises only if the duty to defend first exists. <u>Am. States Ins. Co. v. Bailey</u>, 133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law and noting that "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify"). Under Texas law, an insurer's duty to indemnify is narrower than its duty to defend. <u>St. Paul Ins. Co. v. Tex. Dep't of Transp.</u>, 999 S.W.2d 881, 884 (Tex. App.—Austin 1999, pet. denied). The duty to indemnify is triggered only by the actual facts establishing the insured's liability in the underlying litigation. <u>Cowan</u>, 945 S.W.2d at 821. Accordingly, "an insurer may have a duty to defend but, eventually, no duty to indemnify." <u>Farmers Tex. County Mut. Ins. Co. v. Griffin</u>, 955 S.W.2d 81, 82 (Tex. 1997).

## IV.   Analysis

In its motion for partial summary judgment, Continental and

14

Sentry argue that they have no duty to defend CGX because the claims of misappropriation of trade secrets do not fall under the provisions of the insurance policies relating to "advertising injury."[33]   Continental also advances the argument that, despite whether or not Rudamac has alleged an "advertising injury," the exclusions under "Knowing Violation of Rights of Others" and "Criminal Acts" bar coverage.[34]

## A. "Advertising injury"

CGX asserts that the Rudamac suit alleges a cognizable advertising injury because it contains allegations that fit one of the enumerated offenses in each policy: "g. the use of another's advertising idea in your 'advertisement'" (the Continental policy); and "c. Misappropriation of advertising ideas or style of doing business" (the Sentry policy).[35]   This case involves allegations that CGX surreptitiously misappropriated confidential business information and then utilized that information to solicit customers.   Rudamac stated in its complaint that its trade secrets include "price information, including private data regarding . . . promotions given."[36]   Additionally, Rudamac stated that its trade

---

[33]    Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 14-19; Intervenor's Mot. Summ. J., Docket Entry No. 43, p. 10-15.

[34]    Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 21-22.

[35]    Def.'s Response to Pl.'s Mot. Summ. J., Docket Entry No. 28, p. 6; Def.'s Response to Intervenor's Mot. Summ. J., Docket Entry No. 47, p. 4.

[36]    Pl.'s Mot. Summ. J, Docket Entry No. 27, Ex. 3, Continental's Insurance Policy, p. CIC00007, ¶ 15-21.

secrets would be used to "learn how to contact suppliers and customers."[37]   From the totality of these statements, CGX argues that "the Rudamac allegations reflect an alleged utilization of Rudamac's promotional information by [CGX] in their advertising to solicit customers generally."[38]   Thus, according to CGX, the allegations fall under "advertising injury" as contemplated by the policy.

For the court to find a cognizable advertising injury under the Insurers' policies, the underlying complaint must allege that CGX used Rudamac's advertising idea in its advertisement or in the course of advertising.   This requires a two-part inquiry.   In order to find an advertising injury, the court must determine that 1) the Rudamac complaint alleges an "advertising idea" and 2) the Rudamac complaint alleges that CGX used that idea in its advertisement.

**1. "Advertising Idea"**

First, the pricing information, including information about past "promotions given," could be interpreted as an advertising idea under both policies.   The Insurers' policies do not define advertising idea, thus the term will be given its plain, ordinary, and generally accepted meaning. See Bituminous Cas. Corp. v. Maxey, 110 S.W.3d 203, 208-09 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)(citing W. Reserve Life Ins. v. Meadows, 261 S.W.2d 554, 557

---

[37]   Id. at CIC00009, ¶ 3-4.

[38]   Def.'s Response to Pl.'s Mot. Summ. J., Docket Entry No. 28, p. 7.

16

(Tex. 1953)).

The Fifth Circuit and Texas' courts have not spoken directly to the definition of an advertising idea in CGL policies, however, the Eleventh Circuit has defined an "advertising idea" as an "idea or concept that is related to the promotion of a product to the public." Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1188 (11th Cir. 2002). Additionally, in the Ninth Circuit case of Sentex Sys., Inc. v. Hartford Acc. & Indem. Co., 93 F.3d 578, 580 (9th Cir. 1996), the court found an advertising idea where the misappropriated trade secrets were related to marketing and sales. Conversely, in Frog, Switch, Mfg. Co., v. Travelers Ins. Co., 193 F.3d 742, 748 (3rd Cir. 1999), there was no advertising idea where the complaint did not allege any "method[] of gaining customers."

CGX points to the language in Rudamac's complaint that information regarding "promotions given" was misappropriated by Chambers, as alleging a misappropriation of an advertising idea. According to Merriam-Webster's Collegiate Dictionary, the word "promotion" means ". . . ; 2. the act of furthering the growth or development of something; especially: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." Merriam-Webster's Collegiate Dictionary, p. 994, (11th ed. 2007). Promotion, then, by its very definition, is a method of gaining customers or increasing sales. Thus, confidential information about promotions, in the general sense,

can be considered advertising ideas.

To refute CGX's contention that Rudamac's information about "promotions given" are advertising ideas, the Insurers rely on Gemini Ins. Co., v. Andy Boyd Co., 2006 WL 1195639(S.D. Tex. May 3, 2006) where the court held that customer lists were not advertising ideas but were merely sales records.  Similarly, the Insurers argue that the "promotions given" in this context merely relate to historical records "of what 'freebies' were given to Rudamac customers in the past" and therefore, are not *methods* of gaining customers.[39]  It is true that historical sales records are most likely not advertising ideas.  However, in the instant case, it is impossible to discern from the face of the complaint whether the "promotions given" referred to sales records or if it referred to promotional ideas about the "manner a product is promoted to the public," which constituted an advertising idea according to the Gemini court.  Id. at 7.  It is as likely that the information about "promotions given" contained ideas about how to enhance sales by giving discounts or draw public attention through the use of promotional items such as logo pens or baseball caps.  To assume that these were merely lists rather than promotional strategies or ideas, would undermine this court's requirement to read the pleadings liberally.  Merchs. Fast Motor Lines, Inc., 939 S.W.2d at

---

[39]   Pl.'s Reply to Def.'s Response to Pl.'s Mot. Summ. J., Docket Entry No. 29, p. 5.

142.   Therefore, the Insurers' arguments are unavailing.

The court must interpret policy provisions in favor of the insured, provided that interpretation is not unreasonable.  Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991).  Texas case law does not define "advertising idea," however cases from other jurisdictions can inform the court how Texas highest court would rule.  See State Farm Fire & Cas. Co. V. Fullerton, 118 F.3d 374, 378 (5th Cir. 1997).  From a review of the case law, an "advertising idea" is an idea, concept, or method related to marketing and sales.  Because "promotions given" is not further explained in the Rudamac complaint and because promotion is defined as the "furtherance of the . . . sale of merchandise through advertising", it is reasonable to interpret Rudamac's complaint as alleging a misappropriation of an advertising idea.

## 2. Use in Defendant's "advertisement" or "in the course of advertising"

This court finds the Rudamac complaint alleges the misappropriation of an advertising idea; however, that does not end the inquiry.  To establish an advertising injury under the terms of the Continental policy, the complaint must allege that CGX *used* Rudamac's advertising ideas in its *advertisement.*  Similarly, to establish an advertising injury under the Sentry policy, the complaint must allege that Defendant used the advertising idea "in the course of advertising [its] goods, products, or services."

CGX claims that Rudamac alleged an advertising injury in the

19

following paragraphs:

> "42. [Rudamac] alleges . . . that [Defendants] (a) utilized [Rudamac's] successful business history and pricing strategy to solicit and misappropriate customers . . . of [Rudamac]."[40]

The question before the court remains whether the above statement alleges that CGX used Rudamac's advertising ideas (i.e., information about the "promotions given") in an advertisement. The Continental policy defines "advertisement" as a "notice that is broadcast or published to the general public or specific market segments about [the insured's] goods, products or services for the purpose of attracting customers or supporters."[41] Thus, this issue turns on how CGX used the information and, ultimately this hinges on whether soliciting or targeting customers is "advertisement" under the policies. The court finds that it is not.

The Insurers contend that contacting and soliciting a competitor's customers, and "engaging in one-on-one contact such as

---

[40]    Pl.'s Mot. Summ. J., Docket Entry No. 27, Ex. 1, Rudamac Complaint, p. CIC00012, ¶ 1-4.

[41]    Pl.'s Mot. Summ. J., Ex. 3, CIC00129. In the interest of simplicity, this court treats "advertisement" and "in the course of advertising" the same. This court adopts the definition of "advertisement" in the Continental policy as the definition of "advertising" in the Sentry policy. This court interprets advertising as contemplating the public or widespread dissemination of material. Although not specifically addressed in Texas case law, the trend in other states is the acceptance of a similar definition in CGL policies. See Select Design Ltd. v. Union Mut. Fire Ins., 674 A.2d 798, 801-803 (Vt. 1996) (discussing cases in various states suggesting that the "majority view" interprets advertising as the widespread distribution of promotional material to the public at large); see also Fox Chem. Co. V. Great Am. Ins. Co., 264 N.W.2d 385, 386 (Minn. 1978) (stating term "advertising" contemplates public or widespread distribution of material). Additionally, the Insurance Services Office (ISO), which drafts the standard CGL insurance policies, defines "advertising" using the same language in the Continental Policy. See Hameid v. Nat'l Fire Ins., 31 Cal.4th 16, 24 n. 3 (Cal. 2003).

is alleged by Rudamac is simply not 'advertising.'"[42]  CGX interprets Rudamac's allegation that it "utilized [Rudamac's] successful business history and pricing strategy to solicit and misappropriate customers" as meaning that CGX utilized "Rudamac's promotional information . . . in their advertising to solicit customers generally."[43]  Unfortunately, the logical leap expounded by CGX is not supported by case law or the terms of the policies.

Although the Texas Supreme Court and its appellate courts have not spoken directly on this issue, a myriad of other state courts and federal circuits have discussed the issue of whether soliciting customers constitutes advertising.  In Hameid v. Nat'l Fire Ins., 31 Cal.4th 16, 29 (Cal. 2003), the court did not consider it advertising where a former employee stole a salon's customer list and solicited its customers.  The conduct in that particular case involved making telephone calls and sending direct mailers to plaintiff's customers advising them of the defendant's lower prices.  Id.  Similarly, the Vermont Supreme Court held that defining advertising to include customer solicitations would stretch the meaning of advertising too far.  Select Design Ltd. v. Union Mut. Fire Ins., 674 A.2d 798, 801-803 (Vt. 1996).  From a policy perspective, if contacting potential customers were to be considered advertising under the policy, almost any dispute related

---

[42]   Pl.'s Mot. Summ. J., Docket Entry No. 27, p. 14.

[43]   Def.'s Response to Pl.'s Mot. Summ. J., Docket Entry No. 28, p. 7.

to economic competition would be covered by the "advertising injury" provision.  See id. at 803.  The Maryland Court of Special Appeals has even gone as far as to say that advertising and solicitation are mutually exclusive, "the difference being that advertising must be of a public nature."  Monumental Life Ins. Co., v. U.S. Fidelity & Guaranty Co., 617 A.2d 1163, 1173 (Md. Ct. Spec. App. 1993).

The lynchpin of what constitutes "advertisement" or "advertising" under a commercial liability policy is that the alleged conduct must be widely disseminated to the general public.  See Smartfoods, Inc., v. Northbrook Prop. & Cas. Co., 35 Mass. App. Ct. 239 (1993) (finding no duty to defend insured for soliciting distributors by mail because the objective of advertising is the wide dissemination of information); Am. States Ins. Co. v. Vortherms, 5 S.W.3d 538, 542 (Mo. Ct. App. 1999) (affirming no duty to defend based on numerous cases that held that 'advertising' involves the widespread distribution of promotional material to the public at large).

It follows from the relevant case law as well as the generally accepted meaning of "advertisement" as a "notice that is broadcast to the general public," that the solicitation and misappropriation of a competitor's customers is not advertising under the Insurers' policies.  There is no evidence from the Rudamac complaint that CGX broadcast anything to the public at large.  Rather, the complaint

22

supports the notion that CGX's solicitation consisted of direct contact with Rudamac's customers in order to lure them away from Rudamac, which would not be advertisement under the policy.  <u>See Monumental Life</u>, 617 A.2d at 1163 (finding it was not advertisement where ex-employee courted a competitor's customers with a personal solicitation that caused many of them to defect).

The complaint alleges that CGX would utilize Rudamac's trade secrets to "'cherry pick' the best and most profitable orders," "direct their efforts more selectively . . . towards customers with which [Rudamac] has already demonstrated a successful pricing. . . history," and "solicit [Rudamac's] customers, . . . with pricing strategies which wrongfully undercut [Rudamac's] pricing."[44]  Here Rudamac is alleging direct contact with specific, prior customers, not a broadcast or notice to the general public or a particular market segment.  In fact, Rudamac's complaint seems to suggest that it eliminates CGX's need to advertise because, with the customer and price lists, CGX would be able to "cherry pick" and be more "selective." This is the opposite of advertising which is the widespread dissemination of material to the public at large.

CGX relies on the unpublished Southern District of New York opinion in <u>Technaoro, Inc. v. U.S. Fidelity & Cas. Co.</u>, 2006 WL 3230299 (S.D.N.Y. Nov. 7, 2006) to assert that a single reference

---

[44] Pl.'s Mot. Summ. J., Docket Entry No. 27, Ex. 1, Rudamac Complaint, CIC00008, ¶ 24-27.

to the word "promotion" can trigger coverage.  However, this court does not read <u>Technaoro</u> to mean that it should accept the existence of the word "promotion" as automatically alleging an advertising injury without examining its context.  The complaint in <u>Technaoro</u> had numerous references to advertising and specifically alleged that the defendant used the Cartier brand to attract customers to its product.  <u>Id.</u> at 13-14. ("Cartier demanded that plaintiff 'immediately discontinue the advertising, promotion and sale of any merchandise incorporating the Cartier Trade Dress, and that all advertising . . . be withdrawn.'").  Conversely, although the word "promotion" is present in the Rudamac complaint, it does not make a single reference to advertising done by CGX.  Thus, the single reference to the word "promotion" in the Rudamac complaint, when taken in context, does not rise to the level of an advertising injury.

    In sum, this court holds that Rudamac's complaint alleged an advertising idea where it stated that CGX misappropriated confidential information about "promotions given." However, this court also holds that Rudamac's complaint did not allege that CGX advertised that information or used the information in connection with an advertisement.  Thus, there was no advertising injury under either policy.[45]

---

    [45]    Because it has been determined that there was no advertising injury, this court does not reach the issue of whether Continental's policy exclusions under "Knowing Violation of Rights of Others" and "Criminal Acts" bar coverage.

The court finds neither Continental nor Sentry has the duty to defend CGX.  Based on the court's finding of no duty to defend, it also follows from this judgment that neither party has a duty to indemnify.  <u>Farmers Tex. Co. Mut. Ins. Co. v. Griffin</u>, 995 S.W.2d 81, 84 (Tex. 1997).

## V. Conclusion

Based on the foregoing, the court **GRANTS** Continental's Motion for Summary Judgment, **GRANTS** Sentry's motion for summary judgment and **DENIES** Defendants' Cross-Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this <u>28th</u> day of August, 2009.

Nancy K. Johnson
United States Magistrate Judge

25